## FRANCIS W. KERCHNER v. JOHN REILLY.

Where one P had been selling goods on his own account and failed, and afterwards K, the plaintiff, under a written contract, furnished P goods to sell as his agent; and the defendant, a sheriff, having an execution against P in favor of one M, seized the goods as the property of P: *Held,* —— That a conversation between P and M, tending to show that M knew that P was K's agent, was competent evidence in a suit against the sheriff for conversion of the goods.

It is too late to object to a deposition on the trial, because it was taken after issue joined, and the Clerk instead of the Judge presiding, named the Commisaioner therein. The objection should have been taken at the time the depositions were passed upon by the Clerk. And when a deposition lies on file for a reasonable time up to the trial, without objection, it is presumed to have been passed upon, and all objection for irregularity is waived.

P contracts with K as follows: "And I further agree, that in the event that I shall not sell any of the goods, &c., shipped and delivered to me by the said K, that I will not make any charge thereon, and that I will hold the same as his property and as his agent as aforesaid, subject to his order, and to be disposed of in any manner that the said K shall direct: *Held,* that P had no estate in the goods whatever, and that an action for their conversion was properly brought by K.

Where one who sold goods on his own account failed, and afterwards sells goods at the same place, as agent for another, it is proper that he should in some way notify the public of the change in the nature of his business: *It may be,* that if no such notice is given, a person who ignorantly gives credit to the agent in the belief that he is acting upon his own account, would be entitled to set up such a defence against the principal. Such notice need not be necessarily given by publication in the newspapers; any equivalent manner of making the same public, will suffice.

(*Macon* v. *Williams,* 66 N. C. Rep. 564, cited and approved.)

CIVIL ACTION, in the nature of Trover, tried at the Spring Term, 1874, of CUMBERLAND Superior Court, by *Buxton, J.* The necessary facts are fully stated by JUSTICE RODMAN.

On the trial below there were a verdict and judgment for the plaintiff, from which defendant appealed.

*B. Fuller* and *Merrimon, Fuller & Ashe,* for appellant.
*Minsdale* and *McRae,* contra.

RODMAN, J.   The case, as far as it is material now to state it, is very briefly this :   One Powers, in partnership with another person, and afterwards on his own account alone had been selling goods as a merchant in Fayetteville, and the firm and he individually became insolvent.   Afterwards the plaintiff, who is a merchant in Wilmington, under a written contract with Powers, furnished him goods to be sold on terms which in effect made Powers the agent of the plaintiff for their sale. These goods were placed in the same store house in which Powers had previously done business on his own account.   The defendant being sheriff, and having an execution in favor of Moore, against Powers, and having been indemnified by Moore, seized and sold the goods so found in the possession of Powers, which is the conversion complained of.

1. .The first exception of defendant is upon the admission of the testimony of Powers to a conversation between him and Moore, before the receipt of the goods from the plaintiff, tending to prove that Moore knew that Powers was going to continue in the store house and sell goods of the plaintiff as his agent.   We concur with the judge below, that the evidence was competent.   To show that it had a legitimate bearing, it is necessary to consider the defence to which it applied.   It was contended for the defendant, that seeing the goods in the possession and apparent ownership of, and that these facts amounted to a representation by Powers, he had a right to suppose that the goods were really his, and that the business he was then carrying on, was a continuation of his former business, and like that on his own account.   And that as the plaintiff, knowing the former business, and the insolvency of Powers, permitted him to make this appearance of ownership,

he (the plaintiff) became thus a party to the representations, and was estopped to deny them as to any person who had acted on them, and would be prejudiced if they were not true. This doctrine is true as a general one, with however the material qualification, that the person acted on the supposed representations, believing that they were true, and was deceived by them. For it is obvious, that if the defendant knew that the goods were in fact not the property of Powers, but of the plaintiff, he had no right to act on the false representations of Powers, and by doing so he became *particeps fraudis.* He was not deceived and could not be injured in a legal sense. Bigelow on Estoppel, 473 and 480. *Mason* v. *Williams*, 66 N. C. 564.

A closely analogous case may arise on the dissolution of a partnership, in which the law is well settled. If a customer of a late firm who has had no actual notice of the dissolution receives from one of the late partners, a note in the partnership name, the other partner is bound ; but not if the holder knew of the dissolution, and that the other partner had no right to use the partnership name, and was *attempting* a fraud upon the other.

For this reason we think the evidence in question, and all the other evidence tending to show that Moore had notice that the plaintiff was the owner of the goods, was competent. And we think that under the circumstances, it was not material whether the sheriff had notice or not, although there was evidence that he did not have notice before the levy. A sheriff who levies under an indemnity from a plaintiff in the execution, stands in the shoes of the plaintiff as to any defence he can make, and must look to his indemnity for relief.

2. Exception upon the admission of the deposition of Russell. This was taken after issue joined, upon a commission in which the Clerk of the Court had inserted the name of one Gray as the commissioner, when the Judge had not named any commissioner in his order for taking the deposition. The question is governed by Rev. Code, chap. 31, sec. 63, which

enacts that a party may take depositions *de bene esse* before, as well after issue joined, and that in the former case the Clerk shall name the commissioner. It is contended that this language raises an implication that in the other case he must be named by the Judge. We are inclined to think that the objection was well founded, though probably the general practice has been the other way. But we think it was not open to the defendant to take it when the deposition was offered on the taial. The act above cited directs the Clerk to pass on all depositions taken on commission and returned to him, and if passed on without appeal, they become legal evidence, if the witness be competent.

This provision is a very useful one, its obvious purpose is to prevent surprise at trials. It does not appear that the deposition was formerly passed upon, but there was no motion by defendant to suppress it for irregularity, and when a deposition lies on file for a reasonable time up to trial, without objection, it must be presumed to have been passed on, and all objections for irregularity are waived.

3. Defendant requested the Judge to instruct the jury that plaintiff could not recover, because under his contract with Powers he did not have the immediate right of possession. The Judge refused so to charge, and the defendant accepted.

We concur with his Honor. It is not doubted that to maintain an action of trover, the plaintiff must have a right to immediate possession. And it is well enough to look at the reason of the rule, in order to see it when it applies. If A lets his horse to B for a month, and during that time C converts it; if A could recover the full value of the horse, he would recover damages which partly belongs to B.

We think that upon the contract in evidence, Powers had no estate in the goods whatever. He had a bare possession, determinable at any time upon the demand of the plaintiff. This is the language of the contract. "And I further agree that in the event that I shall not sell any of the goods, &c., shipped and delivered to me by the said Francis W. Kerchner,

that I will not make any charge thereon, and that I will hold the same as is his property, and as his agent as aforesaid, subject to his order, and to be disposed of in any manner that he, the said Kerchner, shall direct."

4. We concur with his Honor that Powers was not a partner of the plaintiff in the goods. There was no community of profits. The plaintiff had no interest in any profits Powers might make.

5. We also concur that Powers was not a tenant in common; and

6. That the contract was not a sale of the goods.

These two propositions need no further remark than what has been said above.

7. As to the question of what notice was necessary that Powers was acting as agent of the plaintiff.

It is contended for the defendant that publication in a newspaper was absolutely necessary, or else the plaintiff's goods intrusted to the possession of Powers, became liable to execution at the instance of his prior creditors. At least, as we conceive, the proposition must reach to that extent to be applicable to this case.

The learned counsel for the defendant has referred to no authority to that effect. When one who has sold goods on his own account, becomes insolvent, and afterwards sells as agent of another, it is proper that he should, in some way, notify the public of the change in the nature of his business. It *may* be, that if no such notice is given, a person who ignorantly gives credit to the agent in the belief that he is acting upon his own account, would be entitled to set up such a defence against the principal. But however that may be, there is no such case here. Morris' debt was incurred before Powers received the plaintiff's goods. He gave no credit upon any apparent ownership of Powers. And even in such a case, we know of no reason why such notice must necessarily be by publication in a newspaper. Any way that is equivalent must suffice, and a notice posted on a tree, in front of the store, and

in the store itself would seem to be sufficient; at least a Judge could not, as a matter of law, declare it insufficient.

8. We think the sixth prayer for instructions was properly refused, for the reason that the question was, not what Powers represented (without the knowledge of the plaintiff), as to the property in the goods, but to whom did the goods in fact belong.

9. We concur with his Honor in his refusal to give the seventh instruction prayed for. Powers was not the agent of the plaintiff to permit the sheriff to sell the goods, and had no authority or duty to forbid the sale. Besides, he had previously forbidden it, as far as he could, by disclaiming all title to the sheriff when they were levied on.

There is no error.

PER CURIAM. Judgment affirmed.